IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC
2009 FEB 20  A 8: 57

| | |
|---|---|
| Joseph M. Roberts, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 9:07-3417-HMH-BM |
| ) | |
| vs. ) | **OPINION & ORDER** |
| ) | |
| Michael J. Astrue, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Bristow Marchant, made in accordance with 28 U.S.C. § 636(b)(1) (2006) and Local Civil Rule 73.02 for the District of South Carolina.[1]

Joseph M. Roberts ("Roberts") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. In his Report and Recommendation, Magistrate Judge Marchant recommends affirming the Commissioner's decision. Roberts objects to the Report and Recommendation. For the reasons stated below, the court adopts Magistrate Judge Marchant's Recommendation.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (2006).

1

## I. Factual and Procedural Background

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 17-31.), and summarized as follows. At the time of the ALJ's decision on February 16, 2006, Roberts was a forty-three-year-old man with the equivalent of a high school education and past relevant work as a dock and production worker. (Id. at 13.) Roberts alleges that he has been disabled since December 31, 2002, due to a stroke.

Roberts was admitted to the hospital on December 31, 2002, after suffering from a posterior circulation stroke. (Id. at 19.) Roberts was noted to have a long history of noncompliance with his diabetes mellitus. On January 3, 2003, Dr. Thomas Appleby ("Dr. Appleby"), a general and vascular surgeon, evaluated Roberts' cardiovascular disease. (Id.) Roberts admitted that he smoked one pack of cigarettes per day. Roberts was placed on Zocor for high cholesterol and was advised to cease smoking immediately. (Id.) Roberts was discharged from the hospital on January 8, 2003.

Roberts visited Dr. Appleby on March 4, 2003. (R. at 20.) Roberts' speech and walking had improved since his January 3, 2003 visit. On April 1, 2003, Dr. Michael Blubaugh ("Dr. Blubaugh") evaluated Roberts at the request of the South Carolina Disability Determination Services. Roberts complained of difficulties with his ability to balance, dizziness, and weakness. Upon examination, Roberts had regular heart sounds with clear lungs. Dr. Blubaugh diagnosed Roberts with a history of cerebrovascular accidents, diabetes mellitus, and depression. (Id.)

On April 4, 2003, Dr. Appleby noted that Roberts was continuing to improve. Roberts was walking with a cane, he was neurologically intact with 5/5 strength, and he had a normal gait except for his dependence on the cane. (Id.) A right vertebral angiography, performed on April 16, 2003, revealed more than 90% origin stenosis. On April 24, 2003, Dr. William Clare ("Dr. Clare"), Roberts' treating physician, reported that Roberts did not exhibit any limitation in function due to a mental condition. He also noted that Roberts did not suffer from any mental abnormalities, only physical problems. The next day Dr. Blubaugh opined that Roberts could walk short distances with a cane.

On June 11, 2003, Dr. Clare reported that Roberts suffered from general physical weaknesses, left-sided extremity weakness, difficulty controlling his left arm, and balance problems. (Id. at 21.) According to Dr. Clare, Roberts' previous stroke affected the part of his brain which affects balance. He opined that Roberts' weakness would prevent him from standing for eight hours and would prevent heavy lifting or fine motor activity. Dr. Appleby noted that while Roberts had improved significantly, he was not back to his pre-stroke condition. (Id.)

On September 8, 2003, Roberts admitted to not regularly taking Zocor. Roberts' lungs were clear and he had a regular heart rate and rhythm. (R. at 21.) Dr. Appleby prescribed a trial of Lexapro for Roberts' depression. On October 7, 2003, Roberts reported to Dr. Appleby that he planned to take a trip to Amsterdam in the near future.

At the request of Roberts' attorney, Dr. Randolph Waid ("Dr. Waid"), a psychologist, performed a neuropsychological evaluation of Roberts on March 25, 2004. Roberts complained of left-sided weakness, difficulty with expressive language, falling on several occasions, short-

term memory problems, difficulty maintaining attention, slurred speech, impatience, and mood swings. (Id.) Dr. Waid found that Roberts had no difficulty understanding instructions and could work in a straightforward, diligent fashion. He found no evidence of depression, anxiety, or pain that significantly interfered with test performance. (Id. at 414.) Roberts' formal motor testing revealed significantly reduced grip strength in his left extremities, impairment of his ability to perform tasks requiring speed or complex attention skills, and significant emotional and personality changes associated with his stroke and secondary depression. (Id. at 22.) Based on his March 25, 2004 examination, Dr. Waid opined in a Mental Residual Functional Capacity Assessment ("MRFCA") completed on April 1, 2004, that Roberts had marked limitations[2] in his ability to understand and remember detailed instructions and in his ability to complete a normal workday and workweek. Dr. Waid found that Roberts had mild restrictions in his activities of daily living, marked difficulties in maintaining social functioning, and maintaining concentration, persistence, or pace. (Id.)

On May 6, 2004, Dr. Kerri Kolehma ("Dr. Kolehma") evaluated Roberts at the request of his attorney. Dr. Kolehma focused solely on Roberts' physical limitations, deferring to the opinions of Dr. Waid regarding Roberts' mental limitations. Upon examination, Roberts was found to have normal muscle bulk and tone, his cranial nerves were intact, and his alternating movements and finger tapping were normal. (R. at 23.) He was able to walk without the use of a cane with normal gait and could walk heel to toe. Roberts reported that he used a cane because he feared falling. Dr. Kolehma noted that Roberts appeared to exaggerate the non-function of

---

[2] According to the MRFCA, a marked limitation is a degree "of limitation that satisfied the functional criteria for presumptive disability under the listed mental impairments." (R. at 407.)

his left upper extremities. According to Dr. Kolehma, medical records revealed that Roberts made excellent progress from his initial exam following his cerebrovascular accident and Roberts could lift and carry ten pounds occasionally. (Id.) Roberts could not, however, perform work which would expose him to vibration. Dr. Kolehma opined that physically, Roberts was capable of returning to a job, although not his previous line of work. (Id.)

Roberts filed an application for DIB on January 21, 2003. Roberts' application was denied initially and on reconsideration. An unfavorable decision was issued on August 26, 2004, by the ALJ. Roberts filed a request for review on October 29, 2004. The Appeals Council issued an order on February 5, 2005, granting the request for review and remanding the case for further proceedings. Roberts appeared and testified at a supplemental hearing on September 21, 2005. Following the hearing, the ALJ issued a decision dated February 16, 2006, denying Roberts benefits. Roberts filed the instant action on October 15, 2007.

## II. REPORT AND RECOMMENDATION

In his brief to the magistrate judge, Roberts argued that the ALJ erred by improperly evaluating the medical evidence concerning his mental impairment and failed to resolve factual inconsistencies between the Vocational Expert ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). (Pl.'s Br. 15-20.)

The magistrate judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on either ground. (Report and Recommendation 14.)

### III. DISCUSSION OF THE LAW

#### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the factual findings of the [Commissioner] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). Hence, absent any error of law, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

#### B. Objections

First, Roberts objects to the magistrate judge's conclusion that the ALJ used the proper legal standard when weighing the relevance of Dr. Waid's medical opinion. Second, Roberts objects to the magistrate judge's conclusion that the ALJ's rejection of Dr. Waid's opinion was supported by substantial evidence. Lastly, Roberts objects to the magistrate judge's finding that the ALJ properly resolved conflicts between the VE testimony and the DOT as required by SSR 00-4p. The court will address each of the objections below.

### 1. Dr. Waid's Medical Opinion

First, Roberts argues that the magistrate judge improperly found that the ALJ used the correct legal standard when giving weight to Dr. Waid's medical opinion. (Objections 2.) The ALJ must afford controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the record and is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(d)(2) (2006). In this instance, however, Dr. Waid was not Roberts' treating physician. Accordingly, "the ALJ was not required to accord Dr. [Waid's] report the weight accorded a report prepared by a treating physician." Rose v. Comm'r of Social Security, No. 98-2169, 1999 WL 147618, at *2 (4th Cir. Mar. 19, 1999) (unpublished).

After a one-time consultation with Roberts, Dr. Waid concluded that Roberts was "not expected to improve" and possessed marked limitations that would preclude him from working during a normal workweek without interruptions from psychologically based symptoms. (R. at 407-10.) Dr. Waid also concluded that Roberts was limited in his ability to maintain social functioning and concentration for an extended period of time. (Id. at 409.) The ALJ rejected the opinion of Dr. Waid as to Roberts' marked limitations. (Id. at 22.) According to the ALJ, Dr. Waid's conclusions were not supported by the totality of the evidence contained within the record.

Dr. Clare, Roberts' treating physician, reported on April 24, 2003, that Roberts did not exhibit any limitations in function due to a mental condition. (Id. at 22-23, 390.) Additionally, Roberts testified that he remained capable of social interaction with his mother and sister, he

7

continues to shop, dine, eat out, and go to the movie theater. (Id. at 23.) During the supplemental hearing, the ALJ found that Roberts was "competent enough to provide detailed information (including listing the names of his prescribed medications) and used complex vocabulary to do so during his testimony." (R. at 23.) In her May 6, 2004 examination, Dr. Kolehma opined that "[m]entally [Roberts] focused on his impairments which he thought made him totally disabled" and he had a tendency to exaggerate the severity of his ability to use his left upper extremities. (Id.) On May 5, 2003, Dr. Jarrell noted that Roberts "may have had a period of depression . . . but this has been resolved . . . [and Roberts] denies depression." (Id. at 308.) Moreover, the ALJ noted that Roberts' medical records consistently discuss Roberts' "excellent progress" from his initial examination following his cerebrovascular accident. (Id. at 23.)

The court finds that the ALJ did not apply an improper legal standard in his decision to reject portions of a non-treating physician's generalized conclusions based on a one-time consultation when such conclusions were inconsistent with the majority of the evidence. Based on the foregoing, Roberts' objection is without merit.

### 2. Substantial Evidence

Second, Roberts argues that the ALJ's rejection of Dr. Waid's opinion was not supported by substantial evidence. As discussed in detail above, the ALJ was "entitled to conclude that the one-time consultation with [Dr. Waid] did not substantiate his opinion" that Roberts was markedly limited in his ability to maintain social functioning and concentration. Rose, 1999 WL

147618 at *2. The court finds that the ALJ's conclusion is supported by substantial evidence for the reasons stated above and included in the ALJ's decision.

### 3. Dictionary of Titles

Lastly, Roberts argues that the ALJ did not resolve conflicts between the VE's testimony and the DOT as required by SSR 00-4p. The ALJ concluded that Roberts is capable of performing a "significant range of light work . . . [which] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." (R. at 29.) The ALJ placed limitations on Roberts' ability stating that he is limited "to only occasional climbing, stooping, kneeling, crouching and crawling as well as only occasional use of his left upper extremity for handling and fine manipulation. [Roberts is also] restricted from concentrated exposure to vibration and from any exposure to work hazards." (Id. at 30.) Finally, the ALJ concluded that Roberts would be restricted to "detailed but not complex work in a low stress, non production work environment with only occasional contact with the public." (Id.)

Based on these limitations, the ALJ questioned the VE as to whether a hypothetical person possessing Roberts' limitations could perform any work which exists in the national economy. (Id. at 107.) The VE testified that Roberts would be able to work as a tobacco sampler, storage facility rental clerk, or a dairy inspector. (Id.) After being asked by the ALJ, the VE testified that his conclusions were consistent with the DOT in accordance with SSR 00-4p. (R. at 107.)

"[B]efore relying on VE . . . evidence to support a disability determination or decision, [an ALJ] must: Identify and obtain a reasonable explanation for any conflicts between

occupational evidence provided by VEs . . . and information in the [DOT.]"  SSR 00-4p, 2000 WL 1898704, at *1 (2000).  In the present case there are no conflicts between the occupational evidence provided by the VE and the DOT.  The descriptions provided by the DOT for tobacco-samplers, dairy inspectors, and storage-facility rental clerks are consistent with Roberts' residual functional capacity to perform light work.  Each job opportunity is defined as light work and requires little to no climbing, stooping, kneeling, crouching, or crawling.  See Dictionary of Occupational Titles, 295.367-026, 529.587-022, 529.687-126 (4th ed. 1991).  Further, the job listings do not expose Roberts to vibrations or unsafe work hazards and require little to no contact with the public.[3]  See id.  As such, the ALJ was not required to demand further explanation from the VE and Roberts' objection is without merit.  Based on the foregoing, the court adopts Magistrate Judge Marchant's Report and Recommendation.

---

[3] While the job of storage-facility rental clerk lists interaction with people as a "significant" part of the job, the court notes that customer contact is merely one of the many industry designations for this occupation; there are a number of responsibilities of a storage rental clerk that do not involve significant interaction with customers.  Further, the court finds that activities such as "assist[ing] customers in selection of storage unit sizes" and "inform[ing] customers of space availability" does not conflict with the ALJ's limitation that Robinson work in an environment with only occasional contact with the public.  Dictionary of Occupational Titles, 295.367-026, 1991 WL 672594 (4th ed. 1991).

It is therefore

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED**.

                s/Henry M. Herlong, Jr.
                United States District Judge

Greenville, South Carolina
February 19, 2009